District Judge James L. Robart

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SEA SHEPHERD LEGAL,

                                    Plaintiff,

                    v.

NATIONAL OCEANIC AND
ATMOSPHERIC ADMINISTRATION and
NATIONAL MARINE FISHERIES SERVICE,

                                    Defendants.

CASE NO.  2:19-cv-00463 JLR

OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT

Noted for Consideration on:
December 11, 2020

OPPOSITION TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT  - 1
(CASE NO. C19-0463-JLR)

Defendants, National Oceanic and Atmospheric Administration ("NOAA") and National Marine Fisheries Service ("NMFS") (collectively, the "Government"), by and through undersigned counsel of record, Brian T. Moran, United States Attorney for the Western District of Washington, and Michelle Lambert, Assistant United States Attorney for said District, hereby opposes Plaintiff Sea Shepherd Legal' s ("SSL") motion for summary judgment (Dkt. No. 43 "Mot.") in this Freedom of Information Act ("FOIA") litigation.  5 U.S.C. § 552.  SSL fails to demonstrate that it is entitled to judgment as a matter of law pursuant to Rule 56 of the Federal Rules of Civil Procedure.  In support of this brief, the Government provides the declaration of Mark H. Graff ("Graff Decl.").

## I.      **INTRODUCTION**

The two main issues to be resolved in SSL's motion for summary judgment are whether (1) the Government appropriately withheld information under FOIA Exemption 5 pursuant to the deliberative process privilege, and (2) whether the Government appropriately withheld personal information pursuant to FOIA Exemption 6.[1]

The Government properly withheld information pursuant to the named FOIA exemptions. First, the Government applied Exemption 5 to responsive records that are squarely protected by the deliberative process privilege and the attorney-client privilege.   Second, the Government appropriately withheld names and other identifying information of New Zealand government employees and other third parties under Exemption 6.  Their strong privacy interests outweigh an

---

[1] SSL also challenges the Government's use of Exemptions 7A and 7C. Mot., at 14-19.  Those claims are now moot.  The Government has released all information formerly withheld pursuant to Exemption 7A.  In addition, the Government has withdrawn its application of Exemption 7C.  Graff Decl., ¶ 26.  However, the Government still maintains Exemption 6 applies to those redactions.

OPPOSITION TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT  - 2
(CASE NO. C19-0463-JLR)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

interest in disclosure.  FOIA does not entitle SSL to anything more than has already been provided.

Accordingly, the Government respectfully requests that the Court deny SSL's motion for summary judgment.

## II.   FACTUAL BACKGROUND

**A.   The Marine Mammal Protection Act ("MMPA").**

The MMPA prohibits, with certain exceptions, the "take" of marine mammals in U.S. waters and by U.S. citizens on the high seas, and the importation of marine mammals and marine mammal products into the United States.  *See* 16 U.S.C. §§ 1361 *et seq.*  To this end, Section 102(a)(2) of the MMPA, 16 U.S.C. § 1371(a)(2), also known as the "Imports Provision", "ban[s] the importation of commercial fish or products from fish which have been caught with commercial fishing technology which results in the incidental kill or incidental serious injury of ocean mammals in excess of United States standards."  Graff Decl., ¶ 4.

In August 2016, NMFS implemented a final rule to implement the Imports Provision. Graff Decl., ¶ 5.  The Imports Provision Rule, as it is known, codified at 50 C.F.R. §§ 216.1 *et seq.*, aims to reduce marine mammal bycatch associated with international commercial fishing by requiring nations exporting fish and fish products to the United States to be held to the same standards as U.S. commercial fishing operations.  *Id.*  To achieve this, the Imports Provision Rule establishes the criteria for evaluating a harvesting nation's regulatory program for reducing marine mammal bycatch and the procedures required to receive authorization to import fish and fish products into the United States.  *Id.*

OPPOSITION TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT  - 3
(CASE NO. C19-0463-JLR)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

In addition, the Imports Provision Rule establishes an annual List of Foreign Fisheries. *Id.*, ¶ 6. This list sets forth foreign commercial fisheries that export fish and fish products to the United States and that have been classified as either "export" or "exempt" based on the frequency and likelihood of incidental mortality and serious injury of marine mammals. *Id.* "Exempt" fisheries have a remote or no known incidence of marine mammal bycatch and "export" fisheries present more than a remote likelihood of marine mammal bycatch. *Id.*

The Import Provision Rule further establishes the criteria for evaluating a harvesting nation's regulatory program for reducing marine mammal bycatch and the procedures required to receive authorization to import fish and fish products into the United States. *Id.*, ¶ 7. To ensure effective implementation, the Import Provision Rule established a five-year exemption period to allow foreign harvesting nations time to develop regulatory programs comparable in effectiveness to U.S. programs. *Id.*

With this extension, foreign nations have until November 30, 2021, to submit their comparability finding applications to NOAA. *Id.*, ¶ 8. NOAA subsequently intends to make final comparability findings for each nation that applies by December 31, 2022. *Id.* Nations must receive a positive comparability finding in order to export fish and fish products to the United States. *Id.*

**B.     SSL's 2018 and 2019 FOIA Requests.**

On December 21, 2018, SSL submitted their first FOIA request to NOAA ("2018 Request") seeking records regarding the inclusion of New Zealand fisheries on the List of Foreign Fisheries, related communications between NMFS and the New Zealand government, and records regarding the application of the Import Provision to New Zealand fisheries

OPPOSITION TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 4
(CASE NO. C19-0463-JLR)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   concerning a particular marine mammal.  Graff Decl., ¶ 9.  NMFS made an interim release of

2   records for the 2018 Request on May 29, 2019, and a final release on the 2018 Request on April

3   8, 2020.  *Id.*, ¶¶ 11, 15.

4         On July 15, 2019, SSL submitted a second FOIA request ("2019 Request") to NOAA.

5   *Id.*, ¶ 12.  The 2019 Request was virtually identical to portions of SSL's 2018 request except for

6

7   the time frame.  *Id.*  The 2019 Request asked for records created or obtained by the agency

8   between March 18, 2019 and the date of any searches performed pursuant to the 2019 Request.

9   *Id.*  NMFS produced records for the 2019 Request on July 31, 2020, August 31, 2020 and

10  September 9, 2020.  *Id.*, ¶ 22.

11

12  **C.    SSL's Petition.**

13        On February 6, 2019, SSL and other entities submitted a petition to NOAA seeking an

14  emergency rulemaking banning the importation of all fish and fish products caught with set nets

15  or trawls within the Māui dolphin's range.   Graff Decl., ¶ 10.  NOAA denied SSL's petition for

16

17  emergency rulemaking on July 10, 2019.  *Id.*, ¶ 13.  At the time of the denial of SSL's petition,

18  NOAA anticipated that New Zealand would implement additional rules by October 2019.  New

19  Zealand subsequently issued its final fisheries measures on June 24, 2020 with an effective date

20  of October 1, 2020.  *Id.*, ¶ 14.

21

22        On May 21, 2020, SSL filed its original complaint in the United States Court of

23  International Trade seeking to compel NOAA to impose an embargo on the fisheries from New

24  Zealand that export to the United States fish caught with technology that results in the incidental

25  killing or serious injury of Māui dolphins in excess of U.S. standards.  *Id.*, ¶ 16.

26

27

28

OPPOSITION TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT  - 5
(CASE NO. C19-0463-JLR)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

On July 15, 2020, New Zealand requested an early comparability finding under the MMPA Import Provisions implementing regulations (50 C.F.R. Part 126) with respect to the Māui dolphin.  *Id.*, ¶ 17.

On July 17, 2020, the Court of International Trade ordered NOAA to reconsider SSL's petition for emergency rulemaking.  *Id.*, ¶ 18.  The court also ordered that, on remand, NOAA may reach a determination on the Government of New Zealand's request of July 15, 2020, to perform a comparability assessment of the New Zealand Threat Management Plan as it relates to the Māui dolphin.  *Id.*  The petitioners filed a supplementary petition on August 27, 2020.  *Id.*, ¶ 20.  NOAA completed its comparability assessment on October 26, 2020.  *Id.*, ¶ 23.  Also, on October 26, 2020, NOAA denied SSL's supplemental petition for emergency rulemaking.  *Id.*, ¶ 24.  On November 23, 2020, NOAA filed its administrative record with the U.S. Court of International Trade.  *Id.*, ¶ 26.  On November 24, 2020, SSL filed a supplemental complaint with the U.S. Court of International Trade.  *Id.*, 27.

**D.     Procedural History.**

On March 28, 2019, SSL commenced this litigation, alleging, among other things, that the Government failed to provide a legally sufficient determination concerning the 2018 Request within FOIA's time limits.  *See* Dkt. No. 1, ¶ 1.  On September 16, 2019, SSL filed a new action in this Court with similar allegations concerning the 2019 Request.  *Sea Shepherd Legal v. NOAA*, 19-cv-1485 (W.D. Wash.), Dkt. No. 1.  The Court consolidated the cases pursuant to Federal Rule of Civil Procedure 42(a) on June 12, 2020.  Dkt. No. 34.

On November 4, 2020, NMFS provided a sample *Vaughn* index detailing the withholdings for 53 records identified by SSL.  Graff Decl., ¶ 25.  An updated version of the

OPPOSITION TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT  - 6
(CASE NO. C19-0463-JLR)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    *Vaughn* index reflecting the recent releases by the Government of previously withheld

2    information is provided here.[2]  Graff Decl., Ex. D.

3         At issue here, SSL's motion challenges the Government's redactions of certain records

4    pursuant to FOIA Exemptions 5, 6, and 7.  Mot., at 1.

5         As detailed below, the Government properly claimed FOIA Exemptions 5 and 6 to

6    withhold certain information, and has released the information previously withheld pursuant to

7    Exemption 7.  Accordingly, the Court should deny SSL's motion for summary judgment.

8

9                    **III.**    **LEGAL STANDARD**

10   **A.    FOIA**

11

12        FOIA provides that any person has the right to obtain access to federal records subject to

13   the Act, unless such records or portions of records are protected from public disclosure by one of

14   nine exemptions.  *See* 5 U.S.C. § 552.  The primary purpose of FOIA is to "ensure an informed

15   citizenry, [which is] vital to the functioning of a democratic society, [and] needed to check

16   against corruption and to hold the governors accountable to the governed."  *John Doe Agency v.*

17   *John Doe Corp.*, 493 U.S. 146, 152 (1989).  A requestor's "rights under FOIA are neither

18   increased nor decreased by reason of the fact that it claims an interest . . . greater than that shared

19   by the average member of the public: The Act is fundamentally designed to inform the public

20   about agency action and not to benefit private litigants."  *Maricopa Audubon Soc. v. U.S. Forest*

21   *Serv.*, 108 F.3d 1082, 1089 (9th Cir. 1997) (internal quotation omitted).

22

23

24

25

26

27   ---
     [2] The *Vaughn* index submitted here varies from the November 4, 2020 *Vaughn* index in that NOAA removed the
     records that have been released to SSL in their entirety.

28

OPPOSITION TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT  - 7
(CASE NO. C19-0463-JLR)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1       The public's interest in government information is not absolute. "Congress recognized,

2 however, that public disclosure is not always in the public interest." *C.I.A. v. Sims*, 471 U.S.

3 159, 166-67 (1985). FOIA's overall structure reflects this balance by mandating disclosure of

4 government records unless the requested information falls into one of nine exemptions. 5 U.S.C.

5 § 552(b). "These exemptions reflect Congress' recognition that the Executive Branch must have

6 the ability to keep certain types of information confidential." *Hale v. U.S. Dept of Justice*, 973

7 F.2d 894, 898 (10th Cir. 1992). FOIA exemptions must be given a fair reading as they serve

8 important interests and "are as much a part of [FOIA's] purpose[s and policies] as the [statute's

9 disclosure] requirement." *Food Mktg. Inst*, 139 S. Ct. at 2366 (internal quotation marks and

10 citation omitted).

11

12

13 **B.**     **Summary Judgment**

14       The ultimate issue in a FOIA action is whether the agency in question has "improperly"

15 withheld agency records. 5 U.S.C. § 552(a)(4)(B); *Kissinger v. Reporters Comm. for Freedom of*

16 *the Press*, 445 U.S. 136, 150 (1980). This is typically a question of law for the court, rather than

17 a question of fact, and thus, "[s]ummary judgment is the procedural vehicle by which nearly all

18 FOIA cases are resolved." *Shannahan v. I.R.S.*, 637 F. Supp. 2d 902, 912 (W.D. Wash. 2009)

19 (citation omitted). The answer to that question turns on whether one or more of the FOIA's

20 specifically enumerated statutory exemptions apply to the document at issue. *See U.S. Dep't of*

21 *Justice v. Tax Analysts*, 492 U.S. 136, 151 (1989).

22

23       Summary judgment is appropriate if there is no genuine issue as to any material fact, and

24 the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving

25 party has the initial burden of demonstrating that summary judgment is proper. *Adickes v. S.H.*

26

27

28

OPPOSITION TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 8
(CASE NO. C19-0463-JLR)

*Kress & Co.*, 398 U.S. 144, 157 (1970).  In relation to summary judgment in FOIA litigation, the

agency must demonstrate that it "conducted a search reasonably calculated to uncover all

relevant documents."  *Zemansky v. E.P.A.*, 767 F.2d 569, 571 (9th Cir. 1985).   If the agency

withheld any records, which is the contested issue here, the agency must demonstrate that such

information fell within one of the FOIA exemptions.  *Shannahan*, 637 F. Supp. 2d at 912.  FOIA

requires that an agency release responsive information unless it is protected from disclosure by

one or more of the Act's nine exemptions.  *See* 5 U.S.C. § 552(b); *see also Tax Analysts*, 492

U.S. at 150-51.

   The agency bears the burden of demonstrating that any withheld information falls into

one or more of those exemptions.  5 U.S.C. § 552(a)(4)(B); *see also Natural Res. Defense*

*Council, Inc. v. Nuclear Regulatory Comm'n*, 216 F.3d 1180, 1190 (D.C. Cir. 2000).  An agency

may meet its burden to establish the applicability of an exemption by providing a *Vaughn* index

that "permit[s] adequate adversary testing of the agency's claimed right to an exemption."

*National Treasury Employees Union v. U.S. Customs Service*, 802 F.2d 525, 527 (D.C. Cir.

1986); *Vaughn v. Rosen*, 484 F.2d 820, 828 (D.C. Cir. 1973).  The index must contain "an

adequate description of the records" and "a plain statement of the exemptions relied upon to

withhold each record."  *National Treasury*, 802 F.2d at 527 n.9.

   Although a *Vaughn* index is a common device used by agencies to meet their burden of

proof, "the Court may award summary judgment solely on the basis of information provided by

the department or agency in declarations when the declarations describe 'the documents and the

justifications for nondisclosure with reasonably specific detail, demonstrate that the information

withheld logically falls within the claimed exemption, and are not controverted by either contrary

OPPOSITION TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT  - 9
(CASE NO. C19-0463-JLR)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

evidence in the record nor by evidence of agency bad faith.'" *Citizens for Responsibility and Ethics in Washington v. U.S. Dep't of Labor*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)); *see also Spirko v. U.S. Postal Service*, 147 F.3d 992, 998 n.4 (D.C. Cir. 1998) ("The form of the *Vaughn* index is unimportant and affidavits providing similar information can suffice.") (citing *Gallant v. NLRB*, 26 F.3d 168, 172-73 (D.C. Cir. 1994)).  Here, the Government has provided both a declaration and a sufficiently detailed *Vaughn* index for the Court's review.  Graff Decl. & Ex. D.

A district court reviews questions under the FOIA, based on the administrative record, using a *de novo* standard of review.  5 U.S.C. § 552(a)(4)(B).

## IV.    ARGUMENT

**A.    The Government properly withheld information pursuant to FOIA Exemption 5.**

In response to SSL's 2018 and 2019 FOIA requests, the Government appropriately withheld documents and information under 5 USC § 552(b)(5) subject to the deliberative process privilege and attorney-client privilege.  *See* Graff Decl., Ex. D.  Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency, provided that the deliberative process privilege shall not apply to records created 25 years or more before the date on which the records were requested."  5 U.S.C. § 552(b)(5).

To qualify as exempt under Exemption 5, a document must "satisfy two conditions: its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8, (2001).  All the

OPPOSITION TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT  - 10
(CASE NO. C19-0463-JLR)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

withheld information at issue here originates from a government agency.  SSL does not

challenge this fact.  Regarding the second condition, courts interpret "this exemption to

encompass the protections traditionally afforded certain documents pursuant to evidentiary

privileges in the civil discovery context, including materials which would be protected under the

attorney-client privilege, the attorney work-product privilege, or the executive deliberative

process privilege." *Ctr. for Biological Diversity v. U.S. Army Corps of Engineers*, 405 F. Supp.

3d 127, 140 (D.D.C. 2019) (internal quotation omitted).  SSL challenges the Government's use

of Exemption 5 in regards to the deliberative process privilege.  Mot., at 7-11.

The deliberative process privilege protects certain "communications from disclosure to

allow agencies freely to explore possibilities, engage in internal debates, or play devil's advocate

without fear of public scrutiny." *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 979 (9th Cir.

2009) (internal quotation omitted).  In order to be exempt, a document must be both

"predecisional" and "deliberative."  *Id.*  SSL argues that the documents are not predecisional

and/or contain factual information.  Mot., at 7-11.

### 1.  *The withheld information is predecisional.*

SSL mistakenly alleges that some of the withheld information is not predecisional.  Mot.,

at 8-9.  SSL incorrectly asserts that the only decision at issue is the Government's decision to

reject its 2019 petition.  Mot., at 8.  However, the Government has identified three ultimate

decisions that required protected deliberative processes: (1) NMFS's decision to reject SSL's

petition for emergency rulemaking to take action under the MMPA Imports Provision (June 18,

2019);  (2) the drafting of the Federal Register notice containing the agency's decision on SSL's

petition (July 10, 2019); and (3) NMFS's final determination on the comparability of New

OPPOSITION TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT  - 11
(CASE NO. C19-0463-JLR)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Zealand's fishery management program as per the Import Provisions of the MMPA (October 26, 2020).  Graff Decl., ¶ 47.  It should be noted that all the information used to make the decision on whether to undertake emergency rulemaking continued to be part of the deliberative process concerning NMFS's determination on the comparability of New Zealand's fishery management program under the MMPA Import Provision.  Graff Decl., ¶ 48.

The Ninth Circuit holds that:

> A "predecisional" document is one prepared in order to assist an agency decisionmaker in arriving at his decision, and may include recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency.  A predecisional document is a part of the "deliberative process," if the disclosure of the materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions.

*Lahr,* 569 F.3d at 979-80.  Predecisional materials include "recommendations, draft documents, proposals, suggestions, and other subjective documents" that reflect "the personal opinions of the writer rather than the policy of the agency."  *Maricopa Audubon Society*, 108 F.3d at 1093.  All of the records at issue fall within these categories.

First, SSL asserts that the deliberative process privilege does not apply to released emails that demonstrate that the Government had already made its final determination to reject SSL's petition.  Mot., at 9.  Second, SSL argues that various drafts of the Decision Memorandum are not predecisional.  Last, SSL argues that revisions to the draft Federal Register notice are not predecisional because they only explain the Government's prior decision.[3]  SSL challenges the predecisional nature of all of these documents because SSL alleges that they were created after

---

[3] SSL also alleged that a document concerning a "roll out" plan for the final notice is not predecisional.  However, that document has been released in full. Graff Decl., ¶ 28 n.2 (document 10301.1 has been released).

OPPOSITION TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT  - 12
(CASE NO. C19-0463-JLR)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   the Government decided to reject its petition.  Mot., at 9.

2          As stated above, the withheld information all predates the final decisions and were

3   created to assist in the decision making process.  Furthermore, the Government continued to use

4   its deliberations concerning its rejection of SSL's petition for its October 2020 comparability

5   finding.  Graff Decl., ¶ 42.  As noted in the *Vaughn* index, many of the redactions are comments

6   or revisions in documents submitted for concurrence for the decision to be finalized.  Therefore,

7   the withheld information was predecisional as the concurrence had not yet been obtained.

8          For example, SSL cites to emails between an employee of NMFS Office of International

9   Affairs and Seafood Inspection to the NMFS Senior Advisor for Regulatory Programs discussing

10  issues related to the publication of the Federal Register Notice announcing NMFS's decision on

11  SSL's petition for emergency rulemaking and drafts of the notice.[4]  Mot., at 9.  The withheld

12  material consists of staff deliberations over how to present to NOAA leadership certain issues

13  related to the publication of the notice.  *See* Graff Decl., ¶ 57.  Further, the drafting of the Federal

14  Notice is deliberative in nature, and the withheld information predates the actual final decision

15  concerning the Federal Register Notice.  *See Skull Valley Band of Goshute Indians v.*

16  *Kempthorne*, No. 04-339, 2007 WL 915211, at *14 (D.D.C. Mar. 26, 2007) ("the drafting

17  process is itself deliberative in nature").

18         The draft Decision Memorandum identified by SSL is a memorandum created to inform

19  NMFS leadership about the staff recommendation to reject SSL's petition.  The withheld

20  information on the draft Decision Memorandum contains staff recommendations for the

---

[4] One of the documents that SSL cites has been released in full.  Graff Decl., ¶ 28 n.2 (document 10397.1).

OPPOSITION TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT  - 13
(CASE NO. C19-0463-JLR)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

inclusion or exclusion of options being considered by NMFS regarding New Zealand's bycatch

management program.  These options were prepared to assist NMFS leadership in its future

decision concerning New Zealand's bycatch management.[5]  *See* Graff Decl., ¶¶ 50-51.  Thus,

these documents are predecisional.

The *Vaughn* index and Graff declaration also demonstrate the deliberative nature of the

withheld information.  In determining the deliberative nature of records, the Ninth Circuit

"applies a functional approach, which considers whether the contents of the documents reveal the

mental processes of the decisionmakers and would expose [the Services'] decision-making

process in such a way as to discourage candid discussion within the agency and thereby

undermine [their] ability to perform [their] functions."  *Sierra Club, Inc. v. United States Fish &*

*Wildlife Serv.*, 925 F.3d 1000, 1015-16 (9th Cir. 2019), *cert. granted*, 140 S. Ct. 1262 (2020)

(citation and internal quotation marks omitted).  The editorial process itself can reveal the

deliberative process.  *See Dudman Communications Corp v. Dep't of Air Force*, 815 F.2d 1565,

1569 (D.C. Cir. 1987) ("[T]he disclosure of editorial judgments – for example, decisions to insert

or delete material or to change a draft's focus or emphasis – would stifle the creative thinking

and candid exchange of ideas necessary . . .").

The Government redacted or withheld certain documents under Exemption 5 because

they are considered pre-decisional and deliberative.  Graff Decl., ¶¶ 50-57.  These documents do

not contain or represent formal or informal agency policies or decisions.  These documents

contain frank and open discussion among agency employees.  The Government has determined

---

[5] Two of the documents cited by SSL have been released in full.  Graff Decl., ¶ 28 n.2 (document 10486.1 and 1049.1).

OPPOSITION TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT  - 14
(CASE NO. C19-0463-JLR)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

that the release of these documents would have a chilling effect on the Government's

deliberative processes and expose the Government's decision-making process in such a way as to

discourage candid discussion within the agencies.  Release of this information would also cause

public confusion by disclosure of reasons, rationales, and conclusions that were not in fact

ultimately the position of the Government.

### 2.  All of the withheld information is deliberative and not purely "factual."

SSL alleges that some of the withheld information is purely factual information and does

not meet the deliberative requirement for the privilege.  Mot., at 10-11.  The Government agrees

that the deliberative process privilege does not shield purely factual materials from disclosure as

agencies have "no legitimate interest in keeping the public ignorant of the facts" from which

those agencies worked.  *See Assembly of Cal. v. U.S. Dep't of Justice*, 968 F.2d 916, 921 (9th

Cir. 1992).  Yet the Supreme Court has warned courts from drawing "wooden" distinctions

between "factual" and "deliberative" records, and has encouraged application of the "same

flexible, common-sense approach that has long governed" discovery disputes in civil litigation.

*National Parks Conservation Ass'n v. U.S. Dep't of the Navy*, C19-645-TSZ, 2020 WL 6820821,

at *11 (W.D. Wash. Nov. 20, 2020) (quoting *EPA v. Mink*, 410 U.S. 73, 91 (1973)).  Some facts

are derived "from a complex set of judgments."  *Assembly of Cal.*, 968 F.2d at 922.  For

example, "factual recitations that appeared in draft, but were deleted from the final version of a

published document, are deliberative because their omission reveals that the agency decided not

to rely on those facts or related analysis after having been invited to do so."  *National Parks

Conservation Ass'n*, 2020 WL 6820821, at *11.

OPPOSITION TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT  - 15
(CASE NO. C19-0463-JLR)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

SSL specifically alleges that two types of documents contain purely factual information.[6] First, SSL argues that the Government redacted "factual information that appears to relate to scientific analyses of threats to the Māui dolphin, the Māui dolphin's interaction with New Zealand fisheries, the Māui dolphin mortality, and NMFS's consultations with the New Zealand government" in the "Three Things Memo." Mot., at 10.[7]  However, the withheld material is not purely factual as it consists of draft scientific analysis on the pros and cons and special considerations of New Zealand's management program for the purposes of determining comparability. Graff Decl., ¶ 50. Even if the substance of the redaction were purely factual, its grouping under "pros" or "cons" would be deemed deliberative as it would reveal the deliberative process of determining which facts would be favorable or not. The material being withheld in another version of the memo involves an NMFS staff opinion on the monitoring component of New Zealand's fishery management program that is not the final agency opinion. Graff Decl., ¶ 51.

Last, SSL argues that staff notes from the consultation with New Zealand should not be redacted because they contain factual information. Mot., at 10. These are the staff members working directly with New Zealand and are responsible for drafting the recommendation to NMFS leadership on the comparability finding. The facts included in these notes are inextricably intertwined with deliberative material (NMFS impressions and opinions on New Zealand's program and future options). While the documents contain factual information, what

[6] SSL's claim concerning the two versions of the Risk Assessment Memo is moot as both records cited by SSL have been released. Graff Decl., ¶ 28 n.2 (document 10168.1 and 10406.1.1 has been released).

[7] Two of the documents that SSL cites concerning the Three Things Memo have been released in full. Graff Decl., ¶ 28 n.2 (document 10168.1 and 10406.1.1 has been released).

OPPOSITION TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 16
(CASE NO. C19-0463-JLR)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

information was considered important enough to be included reveals the mental processes of the

staff members.  These notes have not been checked for accuracy or whether they contain all

information from the consultation.  Graff Decl., ¶¶ 55-56.  The disclosure of these personal notes

of staff members would chill staff members from taking notes in the future for fear of including

non-pertinent information that may later be disseminated to the public.  Also, the notes could

cause confusion by placing emphasis on a fact that is not later considered by the agency during

deliberations

Contrary to SSL's assertions otherwise, the Government satisfied the foreseeable harm

standard by demonstrating in the *Vaughn* index and the Graff declaration that the disclosure of

the withheld material would "expose an agency's decision-making process in such a way as to

discourage candid discussion within the agency and thereby undermine the agency's ability to

perform its functions."  *Carter v. U.S. Dep't of Commerce*, 307 F.3d 1084, 1090 (9th Cir. 2002).

Accordingly, the Government properly invoked Exemption 5 for the withheld

information.[8]

**B.      The Government properly withheld information under Exemption 6.**

SSL challenges the Government's assertion of Exemption 6.  Mot., at 16-19.  The

Government appropriately withheld names and other identifying information of New Zealand

employees and other third parties under 5 U.S.C. § 552(b)(6).  *See* Graff Decl., ¶¶ 68-75.

---

[8] SSL also challenges six other documents that have Exemption 5 and 6 redactions based solely on the foreseeable harm standard of 5 U.S.C. § 552(a)(8)(A).  Mot., at 21 n.20.  The Ninth Circuit has not addressed the foreseeable harm standard.  However, the *Vaughn* index and the Graff declaration provides the specific harms that disclosure of the withheld information would cause as it relates to each applied exemption.  Graff Decl., ¶ 54.  It should be noted that two of the documents are redacted pursuant to the deliberative process privilege and the attorney-client privilege.  *Id.*, ¶¶ 60-61.  Disclosure of this information could waive the attorney-client privilege for the underlying subject matter.

OPPOSITION TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT  - 17
(CASE NO. C19-0463-JLR)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Exemption 6 serves to protect personal privacy, permitting an agency to withhold "personnel and medical files and similar files the disclosure of which would clearly constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). "Disclosures that would subject individuals to possible embarrassment, harassment, or the risk of mistreatment constitute nontrivial intrusions into privacy under Exemption 6." *Cameranesi v. United States Dep't of Def.*, 856 F.3d 626, 638 (9th Cir. 2017). The term "similar files" is to be interpreted broadly, covering all "Government records on an individual which can be identified as applying to that individual." *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 595, 602 (1982); *see also Lepelletier v. Fed. Deposit Ins. Corp.*, 164 F.3d 37, 47 (D.C. Cir. 1999) ("The Supreme Court has interpreted the phrase 'similar files' to include all information that applies to a particular individual.").

As detailed in the Graff declaration, the Government mainly asserted Exemption 6 to withhold the names and other identifiers of New Zealand government personnel at the request of the government of New Zealand in accordance with their privacy laws. Graff Decl., ¶ 70. For those individuals whose names were redacted, the Government also withheld any personally identifying information, including email addresses, phone numbers, personally identifiable information (PII) in signature blocks, names appearing within emails, and names appearing within other documents. *Id.* The Government also withheld the names of third-party individuals with no direct involvement with the New Zealand consultation at issue here. *Id.*, ¶ 71. Finally, the Government applied Exemption 6 to a personal email address, personal cell phone numbers, conference lines, and Google Drive links that access staff Google Drives. *Id.*, ¶¶ 72-75. All of these fall within Exemption 6's threshold for personnel and medical and similar files.

OPPOSITION TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT  - 18
(CASE NO. C19-0463-JLR)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

If the threshold requirement of "personnel and medical files and similar files" is met, as it has been here, the Court must weigh the "privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, the disclosure would work a clearly unwarranted invasion of personal privacy." *Lepelletier*, 164 F.3d at 47.  If the requesting party cannot demonstrate a public interest in disclosure, then the court will not order disclosure, because "something, even a modest privacy interest, outweighs nothing every time." *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989).

Here, the Government has redacted information because New Zealand requested redactions of their employees' information as required by their privacy laws.  Graff Decl., ¶ 70.  The third-party individuals' identities were redacted as these people have no direct connection with the issue at hand; therefore, they should not be subject to harassment as a result of the release.  *Id.*, ¶ 71.  Furthermore, none of these redactions would provide insight into the Government's actions at issue here.

Once the government identifies a cognizable privacy interest, the burden shifts and "the requester bears the burden of showing (1) that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake, and (2) that the information is likely to advance that interest," otherwise the invasion of privacy is unwarranted.  *Tuffly v. U.S. Dep't of Homeland Sec.*, 870 F.3d 1086, 1094 (9th Cir. 2017) (internal quotation omitted).  In considering whether the public interest is significant, "the *only* relevant public interest in the FOIA balancing analysis is the extent to which disclosure of the information sought would she[d] light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *Cameranesi*, 856 F.3d at 639-40

OPPOSITION TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT  - 19
(CASE NO. C19-0463-JLR)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   (internal quotation omitted).  "This inquiry focuses not on the general public interest in the

2   subject matter of the FOIA request, but on the additional usefulness of the specific information

3   withheld." *Tuffly*, 870 F.3d at 1094 (internal quotation and citation omitted).

4       There is not a significant public interest in disclosure of the redacted names, personal

5   information, or the other redacted information here.  SSL claims that it

6

7           is entitled to learn the identities of the individuals in question because such
            information could reveal, among other things: (1) who inside and outside the
8           agencies consulted on the decision; (2) whether those individuals have conflicts of
            interest; (3) whether those individuals were under political pressure to give
9           specific recommendations; and (4) whether those individuals have sufficient
            expertise to weigh in on issues that impact the Māui dolphin's very survival.
10

11  Mot., at 18.  However, the Government did not redact the names of NOAA or NMFS employees.

12  *See* Graff Decl., ¶ 68-75.  Thus, SSL has the information it seeks to identify the Government

13  employees involved in the deliberations at hand.

14

15      SSL further argues that the identities of New Zealand employees should be released.

16  Mot., at 18-19.  SSL cites two cases involving the application of Exemption 6 to names of

17  private individuals that authored scientific reports or worked on biological surveys on behalf of

18  agencies and the identities of experts.  *Id.*  Unlike in those cases, the potential injury here is not

19  hypothetical:  the release of the names will likely violate New Zealand's privacy laws.[9]

20  Furthermore, SSL has not identified how the release of this specific information will provide any

21  insight what the Government is doing.  The New Zealand employees do not have the same roles

22

23

24

25

26  [9] *See* New Zealand's Privacy Act 2020,

27  http://www.legislation.govt.nz/act/public/2020/0031/latest/LMS23223.html#LMS23376.

28

OPPOSITION TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT  - 20
(CASE NO. C19-0463-JLR)

1   as in the cited cases.  Finally, SSL provides no public interest for the release of other non-

2   relevant third-party names.

3       To deflect from its burden, SSL argues that the Government has not provided "a detailed

4   explanation of the harm to the individuals whose personal information is at issue would suffer

5   from disclosure."  Mot., at 20.  These non-Government employees have a non-speculative

6   privacy interest to avoid any harassment concerning the decisions at hand.

7

8       Accordingly, the significant privacy interests of the individuals greatly outweigh any

9   minimal public interest in disclosure of the redacted names.  Furthermore, SSL has not

10  articulated any public interest in the personal email address, phone numbers, other PII, Google

11  Drives, or conference lines redacted pursuant to Exemption 6.  Therefore, SSL has failed to

12  satisfy its burden.  *See Tuffly*, 870 F.3d at 1093 ("Absent a showing of a significant public

13  interest under step two, the invasion of privacy is unwarranted, and the information is properly

14  withheld.").

15

16

17

18

19  **C.      The Government has released all segregable material.**

20      Agencies are required to "take reasonable steps necessary to segregate and release

21  nonexempt information."  5 U.S.C. § 552(a)(8)(ii).   Here, the Government, after an in-depth

22  review, determined that there is no further reasonably segregable information to be released and

23  all segregable information has been released to SSL.  Graff Decl., ¶¶ 76-78.  SSL's argument

24  that some of the redactions are excessive lack support.  Mot., at 21-22.  SSL mainly bases its

25  claim on the size of the redactions, while ignoring the description of the withheld information in

26

27

28

OPPOSITION TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT  - 21
(CASE NO. C19-0463-JLR)

the *Vaughn* index.  It should be noted that the Government has further released some of the

documents at issue.

## **CONCLUSION**

For the reasons explained herein, the Government respectfully requests that the Court

deny SSL's motion for summary judgment.

DATED this 7th day of December, 2020.

Respectfully Submitted,

BRIAN T. MORAN
United States Attorney

*s/ Michelle R. Lambert*
MICHELLE R. LAMBERT, NYS #4666657
Assistant United States Attorney
United States Attorney's Office
1201 Pacific Ave, Suite 700
Tacoma, Washington  98406
Phone: (253) 428-3824
Email: michelle.lambert@usdoj.gov

*Attorneys for the Navy*

OPPOSITION TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT  - 22
(CASE NO. C19-0463-JLR)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970